

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
06/10/2015

| | | |
|---|---|---|
| IN RE: | § | |
| GEARY LIGHTFOOT | § | CASE NO: 13-32970-H4 |
| LINDA LIGHTFOOT, | § | |
|     Debtors. | § | |

**MEMORANDUM OPINION REGARDING THE CHAPTER 13 TRUSTEE'S OBJECTION TO DEBTORS' MOTION TO MODIFY CONFIRMED PLAN**
[Doc. Nos. 96 & 101]

## I.  INTRODUCTION

This Memorandum Opinion decides whether a Chapter 13 plan may provide for post-petition interest on child support debt without providing for full payment to all creditors, despite § 1322(b)(10) of the Bankruptcy Code,[1] which requires 100% payment of all allowed claims if post-petition interest is to be paid on nondischargeable debt (such as child support).  This Court addresses the apparent conflict between § 1322(b)(10) and § 1322(a)(2), which requires that all domestic support obligations (DSOs), defined to include interest in § 101(14A), be paid in full.  The Court concludes that the inclusion of interest on DSOs, *by definition*, removes DSOs from the ambit of § 1322(b)(10), which applies to the payment of interest on allowed claims, not claims that themselves include interest.  Therefore, § 1322(b)(10) does not prevent confirmation of a Chapter 13 plan that includes state-mandated interest on DSOs.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

1. Geary and Linda Lightfoot (the Debtors) filed a Chapter 13 petition on May 14, 2014 (the Petition Date).  [Doc. No. 1].

---

[1] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code, unless otherwise noted.

1

2. Geary Lightfoot's ex-wife, Michele Landry, is a creditor in this case for child support arrearages of $19,898.79 owed to her on the Petition Date. [Claim No. 4].

3. On August 7, 2013, the Debtors filed their Amended Chapter 13 Plan, [Doc. No. 51], which this Court confirmed on August 19, 2013, [Doc. No. 56].

4. On February 2, 2015, the Debtors filed their Motion to Modify Confirmed Plan (the Motion to Modify), which included the proposed modified plan as an attachment (the Proposed Plan). [Doc. No. 96].

5. One of the requested modifications is to pay six percent (6%) annual interest on Ms. Landry's allowed claim for child support arrearages. [*Id.* at 1].

6. The Proposed Plan estimates that unsecured creditors will receive a five percent (5%) dividend. [Doc. No. 96-3, p. 7].

7. On February 24, 2015, the Chapter 13 Trustee (the Trustee) filed an objection to the Motion to Modify (the Objection). [Doc. No. 101].

8. The Objection asserts that the Proposed Plan fails to comply with § 1322(b)(10) because it proposes to pay six percent (6%) interest on the child support claim without paying a 100% dividend to general unsecured claims. [*Id.*].

9. The Court held a hearing on the Motion to Modify and the Objection on March 5, 2015. The Court heard argument from counsel, and then took the matter under advisement.

III. **JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY**

A. **Jurisdiction**

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b). 28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Bankruptcy Code], or arising in or

related to cases under title 11." District courts may, in turn, refer these proceedings to the bankruptcy judges for that district. 28 U.S.C. § 157(a). In the Southern District of Texas, General Order 2012-6 (entitled General Order of Reference) automatically refers all eligible cases and proceedings to the bankruptcy courts.

The phrase "arising in" a case under title 11 refers to proceedings that "would have no existence outside of the bankruptcy." *Matter of Wood*, 825 F.2d 90, 96 (5th Cir. 1987). This contested matter involves the interpretation of a Code provision; therefore, it would have no existence outside of this Chapter 13 bankruptcy. Consequently, it is within federal district court jurisdiction pursuant to 28 U.S.C. § 1334(b) and has been referred to this Bankruptcy Court under General Order 2012-6.

### B. Venue

Venue is proper pursuant to 28 U.S.C. § 1408(1), which provides that:

> a case under title 11 may be commenced in the district court for the district . . . in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement . . . .

Here, there is no dispute that virtually all of the assets of the Debtors were located in Rosharon, Texas on the Petition Date and that these assets had been located there for the 180 days prior to the Petition Date. Rosharon is in Brazoria County, Texas, which is part of the Southern District of Texas. Thus, venue is clearly proper.

### C. Constitutional Authority to Enter a Final Order

In the wake of the Supreme Court's ruling in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), this Court must also evaluate whether it has the constitutional authority to enter a final order adjudicating the dispute at bar. In *Stern,* the Supreme Court held that 28 U.S.C. §

3

157(b)(2)(C)—which authorizes bankruptcy judges to issue final judgments in counterclaims by a debtor's estate against entities filing claims against the estate—is an unconstitutional delegation of Article III authority to bankruptcy judges, at least when the dispute being adjudicated is based on state common law and does not affect the claims adjudication process. *Id.* at 2616.

The dispute at bar is not a counterclaim of the Debtors, nor does it arise out of state law. Rather, the dispute arises entirely out of § 1322, which governs what terms are required and what terms are permissible in a Chapter 13 plan. State law has no equivalent to this provision; it is purely a creature of the Bankruptcy Code. Accordingly, this Court has the constitutional authority to enter a final order pursuant to 28 U.S.C. §§ 157(a) and (b)(1). Alternatively, this Court has the constitutional authority to sign a final order because the parties have consented, impliedly if not explicitly, to adjudication by this Court. *Wellness Int'l Network, Ltd. v. Sharif*, No. 13-935, at *2, 575 U.S. ___ (May 26, 2015).

## IV.   CONCLUSIONS OF LAW

In interpreting the Code, bankruptcy courts favor constructions that harmonize provisions over constructions that would nullify or subordinate one in order to apply another. *In re Kitty Hawk, Inc.*, 255 B.R. 428, 436 (Bankr. N.D. Tex. 2000). Reading § 1322(b)(10) in harmony with the rest of the Code, this Court finds that it does not bar payment of post-petition interest on DSOs, because the Code defines DSOs to *include* post-petition interest, "notwithstanding any other provision of this title." 11 U.S.C. § 101(14A).

The current definition of DSO was added as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, subtit. B, 119 Stat. 23, 50–59 (2005) (BAPCPA). The changes to treatment of DSOs were intended to "accord[] domestic and child

support claimants a broad spectrum of special protections." H.R. Rep. No. 109-31(I), 16, *reprinted in* 2005 U.S.C.C.A.N. 88, 102. Legislative history indicates that the broadly defined "DSO" was intended to be given top priority among claims. The House Report accompanying the bill states:

> The legislation creates a uniform and expanded definition of domestic support obligations to include debts that accrue both before or *after* a bankruptcy case is filed. It gives the highest payment priority for *these debts*.

*Id.* (emphasis added). In addition to the new definition in § 101, the House Report is referring to the change in § 507, where BAPCA moved domestic support obligations from seventh to first priority among unsecured debts. 119 Stat. 23, 50–59.

These two changes determine the correct interpretation of § 1322, the Code section at issue in this dispute, which defines what shall be and what may be included in a Chapter 13 plan. Section 1322(a), which contains the required provisions, specifies that a Chapter 13 plan must provide for full payment of all § 507 priority claims. 11 U.S.C. § 1322(a)(2). Section 507(a)(1)(A), top priority, is given to "[a]llowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor . . . ." The new definition of "domestic support obligation" is "a debt that accrues before, on, or after the date of the order for relief in a case under this title, *including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title* . . . ." 11 U.S.C. § 101(14A) (emphasis added). The child support arrearage claim in the instant Debtors' case qualifies as "a debt that accrue[d] before . . . the date of the order for relief" and is defined to include interest, here, 6% under the Texas Family Code § 157.265(a).[2] Therefore, "as of the date

---

[2] Texas Family Code § 157.265 is entitled "Accrual of Interest on Child Support" and reads:

5

of the filing of the petition" the entire arrearage, with interest, was "owed to or recoverable by" Ms. Landry. Section 1322(a)(1)(A) consequently mandates that the entire arrearage, with interest, be provided for in the Proposed Plan. Thus, as accords with Congress's intention expressed in the House Report, the changes to § 101 and § 507, together, not only *allow* but *require* Chapter 13 plans to provide for payment of post-petition interest on DSO claims.

This is true despite § 1322(b)(10), on which the Trustee relies in the instant Objection. Section 1322(b) defines what "may" be included in a Chapter 13 plan, and § 1322(b)(10) states that a plan may "provide for the payment of interest accruing after the date of the filing of the petition on unsecured claims that are nondischargeable under section 1328(a), except that such interest may be paid only to the extent that the debtor has disposable income available to pay such interest after making provision for full payment of all allowed claims." Section 1328(a), the provision granting a discharge for Chapter 13 debtors, creates an exception for certain types of debt listed in § 523(a), including § 523(a)(5), "any debt . . . for a domestic support obligation." Thus, at least one court has held that § 1322(b)(10) prevents payment of post-petition interest on

---

(a) Interest accrues on the portion of delinquent child support that is greater than the amount of the monthly periodic support obligation at the rate of six percent simple interest per year from the date the support is delinquent until the date the support is paid or the arrearages are confirmed and reduced to money judgment.
(b) Interest accrues on child support arrearages that have been confirmed and reduced to money judgment as provided in this subchapter at the rate of six percent simple interest per year from the date the order is rendered until the date the judgment is paid.
(c) Interest accrues on a money judgment for retroactive or lump-sum child support at the annual rate of six percent simple interest from the date the order is rendered until the judgment is paid.
(d) Subsection (a) applies to a child support payment that becomes due on or after January 1, 2002.
(e) Child support arrearages in existence on January 1, 2002, that were not confirmed and reduced to a money judgment on or before that date accrue interest as follows:
    (1) before January 1, 2002, the arrearages are subject to the interest rate that applied to the arrearages before that date; and
    (2) on and after January 1, 2002, the cumulative total of arrearages and interest accumulated on those arrearages described by Subdivision (1) is subject to Subsection (a).
(f) Subsections (b) and (c) apply to a money judgment for child support rendered on or after January 1, 2002. A money judgment for child support rendered before that date is governed by the law in effect on the date the judgment was rendered, and the former law is continued in effect for that purpose.

6

child support claims under a plan that does not propose payment of all claims in full. *See In re Hernandez*, No. 07-40470-R, 2007 WL 3998301, at *2 (Bankr. E.D. Tex. Nov. 15, 2007).

The *Hernandez* court framed the issue as whether the post-petition interest on a child support arrearage is entitled to priority just as the principal amount of the arrearage is. *Id.* If the interest is entitled to priority, then § 1322(a)(2) would prohibit confirmation of any plan that did *not* propose paying it. Extending the *Hernandez* court's reasoning, § 1322(b)(10) would then have to refer only to interest paid over and above allowed priority claims, not interest that is granted priority in itself, or else the two subsections would be irreconcilable. The *Hernandez* court concluded that post-petition interest on DSO claims is not entitled to priority because it is not "owed to or recoverable by" the creditor "as of the date of the filing of the petition." Furthermore, the court reasoned that post-petition child support interest is not an allowed claim at all, because § 502(b)(2) mandates disallowance of claims for "unmatured interest" and § 502(b)(5) mandates disallowance of claims for unmatured DSO claims.

This Court disagrees with both the *Hernandez* court's reading of § 507(a) and its reading of § 502. The Court finds that the full DSO arrearage claim, with interest, is "owed to" Ms. Landry under the Texas Family Code, within the meaning of § 507(a)(1)(A). To interpret § 507(a)(1)(A) to exclude this interest would deprive families from the amounts they are owed under the Texas Family Code and undermine Congress's clear intent to give "the highest payment priority to an "expanded definition of domestic support obligations [that] include[s] debts that accrue both before or *after* a bankruptcy case is filed." H.R. Rep. No. 109-31(I), 16, *reprinted in* 2005 U.S.C.C.A.N. 88, 102 (emphasis added).

Further, post-petition DSO interest is not disallowed by either § 502(b)(2) or § 502(b)(5). Section 502(b)(2), which disallows claims for unmatured interest generally, is overcome by §

7

101's inclusion of interest in the definition of DSO "notwithstanding any other provision" of the Code. The explicit inclusion of interest in the definition of DSO also saves all state-mandated DSO interest from disallowance under § 502(b)(5), which generally disallows claims for unmatured DSOs. Section 502(b)(2) is not thereby rendered a nullity, as at least one commentator has suggested. *See* Rafael I. Pardo, *Reconceptualizing Present-Value Analysis in Consumer Bankruptcy*, 68 Wash. & Lee L. Rev. 113, 169 n.265 (2011). The language "notwithstanding any other provision of this title" in § 101(14A) is contained within the clause referring specifically to DSO interest, and therefore § 502(b)(2)'s disallowance of other unmatured DSOs is unaffected.

## V.  CONCLUSION

In conclusion, the Court finds that the Debtors are not only allowed, but are required, to provide in the Proposed Plan for the payment of the 6% interest which accrues on Ms. Landry's DSO claim pursuant to Texas Family Code § 157.265. Section 1322(a)(2) states that a Chapter 13 plan shall provide for payment of all priority claims in full, and § 507 gives priority to DSOs that are "owed to or recoverable" on the petition date. Under the Texas Family Code, Debtor Geary Lightfoot owed Ms. Landry $19,898.79 plus interest on the Petition Date. *See* Claim No. 4. The Code's prohibitions on unmatured interest and unmatured child support, *see* 11 U.S.C. §§ 502(b)(2) & (5), do not apply to DSO interest provided for by the Texas Family Code because the definition of DSO includes post-petition interest under state law "notwithstanding any other provision of this title." 11 U.S.C. § 101(14A).

The Trustee has informed this Court that if this Court overrules the Objection, he would be in favor of the Motion to Modify. [Hearing of March 5, 2015, at 2:33 p.m.]. This Court has determined that, because DSO is defined in the Code as including post-petition interest, *see* 11

U.S.C. § 101(14A), such interest is considered *part* of the underlying claim and not considered interest *on* a claim; therefore, the Proposed Plan is not barred by § 1322(b)(10). Having resolved this issue in favor of the Debtors, this Court has no further reason to delay approval of the Motion to Modify. So long as the Debtors successfully make all of the payments under the Proposed Plan, they will be able to certify that they have paid all of the DSO payments due under applicable Texas law, as required by § 1328(a)(2) and they will therefore be eligible to obtain their discharge.

An order granting the Motion to Modify will be entered on the docket simultaneously with the entry of this Memorandum Opinion.

Signed on this 10th day of June, 2015.

Jeff Bohm
United States Bankruptcy Judge